Richard T. ARNOLD, Plaintiff,

v.

LUEDTKE ENGINEERING, CO., Defendant.

No. 1:04–CV–69.

United States District Court, W.D. Michigan, Southern Division.

Feb. 24, 2005.

Judith A. Schornack–Smith, Jaques Admiralty Law Firm, P.C., Detroit, MI, for Richard T. Arnold, plaintiff.

George M. Velcich, Belgrade & O'Donnell, PC, John A. O'Donnell, Belgrade & O'Donnell, PC, Patrick J. Cullinan, Belgrade & O'Donnell, PC, Steven B. Belgrade, Belgrade & O'Donnell, PC, Chicago, IL, for Luedtke Engineering Co., defendant.

## OPINION

ROBERT HOLMES BELL, Chief Judge.

The matter before the Court involves the issue of whether an employee of a maritime construction company is a "seaman" as that term is defined under the Jones Act, 46 U.S.C. § 688, entitled to remedial relief under the Jones Act, where the employee was injured while assigned to a project involving the reconstruction of a seawall along the shore of the Erie Canal. Plaintiff Richard T. Arnold seeks damages for negligence and vessel unseaworthiness against his employer, Defendant Luedtke Engineering Co. ("Luedtke"), pursuant to the Jones Act. Before the Court is Luedtke's motion for summary judgment. Luedtke contends that Arnold is unable to avail himself of the remedies sought under the Jones Act because he is not a "seaman" under the statute. For the reasons that follow, the Court will grant Luedtke's motion for summary judgment.

I.

Luedtke is a maritime construction and dredging company involved in maintenance dredging, marina construction, and break wall construction. Over the past twenty-three years, Arnold was employed with Luedtke in various capacities including runner, deckhand, tugboat pilot, and project foreman. As part of his employment, Arnold was required to be a member of the Seafarers International Union.

The events giving rise to this dispute occurred in September 2002 while Arnold

was assigned as project foreman to a seawall reconstruction project at Black Rock Lock in Buffalo, New York. The seawall is 750 feet in length along the shore of the Erie Canal. From the waterside, the seawall is seven feet tall, however, from the beachside the wall is waist-level. Luedtke's task on the project was to straighten the wall and ensure that the material from the beach did not enter the canal. The project involved four phases: sheet piling, stone placement behind the refurbished wall, concrete pouring, and wedge plate attachment. The project began in February 2002 and continued until November of that year. Due to the seawall's location near the canal, the project required the use of a tug boat, derrick boat, and floating work raft. The derrick boat is a one-hundred thirty foot by forty foot barge. While the derrick boat can be moved short distances by using an attached crane to dig into a river bottom, the tug boat is generally utilized to transport it. On the Black Rock Lock Project, the Luedtke employees placed a crane on the derrick boat in order to assist in the placement of the steel plates along the seawall. The derrick boat also was used to transport equipment and materials from one side of the lock to the other as needed.

The floating work raft is a forty by six foot pontoon raft. The work raft was moved around the seawall by hand and the employees used it as a platform from which they could weld steel plates onto the seawall from the waterside. The tug boat was used to pull the derrick boat along the seawall. Arnold would pilot the tug boat when the derrick boat needed to be moved. According to Arnold, at a maximum he piloted the tug boat three to four times per day for an estimated fifteen to twenty minutes per tug. Arnold estimated that the longest tow he was required to make on the Black Rock Lock Project was three to four hundred feet.

Arnold was injured during the wedge plate phase of the Black Rock Lock Project. During this phase, Arnold was engaged in welding one-hundred pound steel plates to the new seawall. In order to maneuver the plate into place along the seawall, Arnold would carry a plate by hand a short distance from the beach to the seawall, place the plate on top of the seawall, step on to the seawall, attach the plate to a cable jack which lowered the plate into position on the waterside of the seawall, then lower himself to the work raft where he would weld the plate into place. Arnold received sporadic assistance from another Luedtke employee during this process but would generally maneuver the plates into position on his own. In early September 2002, Arnold began experiencing back pain while lifting the wedge plates. Arnold continued to work for approximately three more weeks until he could no longer get out of bed due to the pain. Subsequently, he has undergone medical treatment and his treating physician has declared him unfit for his prior occupation. Pursuant to the employment contract with the Seafarer's Union, Luedtke paid Arnold $300 per week following his injury as maintenance and cure. Maintenance and cure is paid to injured members of the union by their employers.

Thereafter, Arnold brought the present suit alleging negligence and vessel unseaworthiness under the Jones Act stemming from his injury on the seawall. Before the Court is Luedtke's motion for summary judgment contending that they are entitled to judgment as a matter of law because Arnold does not satisfy the requirements for seaman status under the Jones Act.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue concerning a material fact is genuine if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The Court will view the facts, and all inferences to be drawn from them, in the light most favorable to the nonmoving party." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 629 (6th Cir.2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is proper if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to the party's case for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Section 688 of the Jones Act provides that any seaman who suffers an injury in the course of his employment, may bring an action for damages. 46 U.S.C.App. § 688. In order to pursue an action under § 688 a maritime employee must be a "seaman." The task of defining who is a seaman for Jones Act purposes has been left to the courts. The Supreme Court has established two essential requirements for "seaman" status: (1) " 'an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.' " *Chandris, Inc. v. Latsis,* 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (quoting *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)).

This requirement is to be interpreted broadly to include, " '[a]ll who work at sea in the service of a ship.' " *Id.* (quoting *Wilander,* 498 U.S. at 354, 111 S.Ct. 807).(2) "[A] seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* In analyzing the second requirement, the Court advised that " 'the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.' " *Id.* at 370, 115 S.Ct. 2172 (quoting *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 432 (5th Cir.1984)). Further, the Court cautioned that when "evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury ...." *Id.* at 363, 115 S.Ct. 2172 (quoting *Easley v. Southern Shipbuilding Corp.* 965 F.2d 1, 5 (5th Cir.1992)). But the Court also warned that lower courts must be mindful that when a maritime employee's assignment changes, his seaman status may change as well. *Id.* at 372, 115 S.Ct. 2172. Therefore, "[i]f a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id.; see also Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 556, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997)("the employee's prior work history with a particular employer may not affect the seaman inquiry if the employee was injured on a new assignment with the same employer ....").

■ Whether an employee is a seaman is a mixed question of law and fact. *Chan-*

*dris, Inc. v. Latsis*, 515 U.S. 347, 369, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). If reasonable persons could differ as to whether the employee was a seaman, it is a question for the jury. *Id.* Where, however, the undisputed facts reveal that a maritime worker does not have an adequate temporal connection to vessels in navigation, the Court may grant summary judgment. *Id.* at 371, 115 S.Ct. 2172.

### III.

■ In this case, summary judgment is appropriate because the undisputed facts reveal that Arnold cannot satisfy the *Chandris* test. Luedtke focuses its argument on the second prong of the seaman status inquiry, substantial connection to a vessel. The undisputed evidence shows that Arnold did not have a substantial connection to a vessel during the wedge plate attachment phase.

Arnold asserts that his twenty-three year employment history with Luedtke demonstrates that he is a seaman and satisfies the *Chandris* test. Arnold offers evidence that during the course of his employment he has served as a runner, deckhand, tug boat pilot, and project foreman on various Luedtke projects. The job descriptions of each of these positions specify certain tasks that appear to involve a connection to a vessel. The tasks include the following: compliance with Coast Guard regulations, assistance with mooring and anchoring, handling lines and ship's ramps, and understanding all phases of shipboard safety. Exhibit B attached to Plaintiff's Brief in Response. Further, Arnold argues that his membership in the Seafarers International Union and Luedtke's payment of maintenance and cure demonstrate that he is a seaman.

The evidence of Arnold's previous tasks with Luedtke demonstrates that over his twenty-three year career he may have been assigned tasks in which he was sub-

stantially connected to a vessel. Arnold's previous employment, however, is not relevant to this case. *See Harbor Tug & Barge Co.*, 520 U.S. at 556, 117 S.Ct. 1535 ("[T]he employee's prior work history with a particular employer may not affect the seaman inquiry if the employee was injured on a new assignment with the same employer, an assignment with different 'essential duties' from his previous ones.") (citing *Chandris*, 515 U.S. at 371, 115 S.Ct. 2172). Although Arnold's previous employment with Luedtke is not relevant to this case, the Court must not narrow its focus to such a degree that only the moment of Arnold's injury is evaluated in determining his seaman status. *See Chandris*, 515 U.S. at 363, 115 S.Ct. 2172; *see also Shade v. Great Lakes Dredge & Dock Co.*, 154 F.3d 143, 150 (3rd Cir.1998) ("while a court must not concentrate exclusively on the employee's specific activity at the time of injury, a court should limit its examination of the employee's duties to the employee's basic job assignment as it existed at the time of injury.").

Luedtke argues that Arnold's job assignment at the time of his injury was a new assignment that was land-based and did not involve any service to a vessel. In support, Luedtke offers the deposition testimony of Luedtke employees who were assigned to the Black Rock Lock Project, including Arnold himself. Richard Payment, a Luedtke employee, testified that the project consisted of four phases: sheet piling, stone placement behind the refurbished wall, concrete pouring, and wedge plate attachment. Deposition of Payment at 55. Payment testified that the wedge plate phase began in August and continued until November. *Id.* at 11, 56–57. Payment also testified that while other phases of the project overlapped and ran together, the wedge plate attachment phase was an entirely separate phase from the other tasks on the project. *Id.* at 56–57. Fur-

ther, prior to beginning the wedge plate phase, Luedtke laid off all of its employees on the project, except Arnold and Payment. *Id.* at 31–32; Deposition of Arnold at 38–39. Arnold also explained that the attachment of the wedge plates was a new type of work for the Luedtke employees, including himself. Deposition of Arnold at 20.

Luedtke's argument appears well-taken. Arnold's assignment to attach the wedge plates to the seawall was a "new assignment" with different essential duties than his previous tasks. *Chandris,* 515 U.S. at 372, 115 S.Ct. 2172. Wedge plate attachment was a type of work that no one from Luedtke had engaged in previously. Further, Arnold and Payment were the only Luedtke employees assigned to this new task because the other employees were laid off prior to beginning the attachment phase. And, unlike previous assignments, it did not require the use of the derrick boat, tug boat or crane. The Court also notes that this phase was not an insubstantial task, rather it was a significant phase that · encompassed approximately four months of the Luedtke employees' time. Therefore, it is clear the wedge plate phase was a substantially different assignment from Arnold's previous work assignments. *Harbor Tug & Barge Co.,* 520 U.S. at 556, 117 S.Ct. 1535. Accordingly, the Court will assess Arnold's seaman status based upon his activities during the wedge plate phase.

■ Arnold's own explanation of his duties during the wedge plate phase demonstrates that he was a land-based employee not entitled to seaman status. Ar-

nold explained that during this phase he carried a wedge plate from the beach to the seawall, placed the plate on top of the seawall, stepped onto the seawall, then lowered himself to a beam that had been temporarily attached to the seawall on the waterside. There he attached a cable jack to the wedge plate that was used to lower the plate into place along the seawall. Arnold then lowered himself onto the work raft where he would weld the plate into place. Deposition of Arnold at 46–50. Arnold's description of the wedge plate attachment process is lacking one crucial element relevant to the seaman inquiry: a vessel.[1] There is no evidence that Arnold's duties during the wedge plate attachment process contributed to the function of a vessel or were substantially connected to a vessel. Indeed, the most that can be said of Arnold's duties is that they contributed to the creation of an appurtenance to land beside a body of water.

The wedge plate phase was a land-based assignment that did not expose Arnold to the dangers of the sea. ·*See Harbor Tug & Barge Co.,* 520 U.S. at 555, 117 S.Ct. 1535 (quoting *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172). Arnold moved between the beach and the seawall, almost exclusively on land, while attaching the wedge plates. Admittedly, while welding the plates to the seawall, Arnold was standing on the work raft floating upon the water, but this incidental on-water activity does not transform him into a seaman for Jones Act purposes. *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172 (stating that employees who have a transitory or sporadic connection to

---

1. Arnold has not argued his use of the floating work raft constitutes the required connection to a vessel. As set forth more fully below, even under the definition of vessel set forth in *Stewart v. Dutra Construction Co.,* 543 U.S. ——, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), the Court does not believe that the work raft

would be considered a vessel for Jones Act purposes because it is not "practically capable" of transporting anything. *See Stewart,* at 1129 ("under § 3, a 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment.").

a vessel in navigation are properly classified as land-based and excluded from Jones Act relief). Moreover, Arnold also admitted that during the wedge plate attachment phase he did not substantially use any watercraft other than the work raft. Deposition of Arnold at 63.

A hypothetical situation illustrates Arnold's inability to claim seaman status. Suppose that during the wedge plate attachment phase, Arnold worked alongside an employee from ABC Construction Company. ABC is a construction company that does not do any work on the water. They are unquestionably a land-based construction company and their employees are land-based employees. Arnold and the ABC employee are engaged in wedge plate attachment as described by Arnold above. If both Arnold and the ABC employee were injured during this assignment, it would be quite an unusual result if they were entitled to two different recoveries, Arnold under the Jones Act, the ABC employee under the state worker's compensation statute. The better result is clearly that both employees are entitled to recover under the worker's compensation statute because they were injured while working on a land-based project.

Finally, Arnold also argues that his service as tug boat pilot during the wedge plate phase of the project constitutes a substantial connection to a vessel. Arnold's own testimony demonstrates that this argument is unavailing. Arnold testified that at a maximum he piloted the tug boat for fifteen or twenty minutes, three or four times a day, moving it three to four hundred feet at a time. Deposition of Arnold at 65–66. Arnold also testified that during the Black Rock Lock Project he initially worked ten hour days, but increased to twelve hour shifts during the wedge plate phase. *Id.* at 66.

■ According to *Chandris*, "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." 515 U.S. at 371, 115 S.Ct. 2172. Clearly, Arnold's piloting of the tug boat for at most one hour of a ten to twelve hour shift does not satisfy the thirty percent rule and therefore does not satisfy the substantial connection requirement. *Id.* The Court is aware that the thirty percent rule is a guideline that can be departed from under appropriate circumstances, *Id.,* but this case does not require such a departure.

Arnold attempts to create an issue of fact regarding his tug boat piloting duties based upon Kevin Hollenbeck's testimony. Hollenbeck is an employee of Luedtke who worked on the Black Rock Lock Project until July 2002. Arnold offers Hollenbeck's statement that the majority of Arnold's work on the project was done on the tug boat and derrick boat as evidence that Arnold had a substantial connection to a vessel. Deposition of Hollenbeck at 37. Hollenbeck's statement does not create a genuine issue of fact because his statement related to work assignments prior to the wedge plate phase. Hollenbeck left the project in July 2002, a month before attachment of the wedge plates began. *Id.* at 43; Deposition of Arnold at 34; Deposition of Payment at 32. In fact, Hollenbeck acknowledged that he did not have any knowledge regarding Arnold's duties during the wedge plate phase. Deposition of Hollenbeck at 43–45. Therefore, Hollenbeck's testimony is not relevant to the time period at issue in this case and does not create a genuine issue of fact necessitating a denial of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. It is undisputed that during the relevant period of time, the wedge plate attachment phase, Arnold's tug boat piloting duties did not rise to the level of substantiality required under *Chandris.* Accordingly, Ar-

nold's piloting of the tug boat does not satisfy the seaman status test.

■ Luedtke has also argued that Arnold cannot satisfy the second prong of the *Chandris* test based upon his connection to the derrick boat. 515 U.S. at 368, 115 S.Ct. 2172. Luedtke's argument is based upon a Sixth Circuit case in which the court held that a derrick boat was not a "vessel" for purposes of the Jones Act because its primary purpose was construction, not navigation or commerce. *Hatch,* 33 F.3d at 547 (quoting *DiGiovanni v. Traylor Bros., Inc.,* 959 F.2d 1119, 1123 (1st Cir.1992), *overruled by Stewart,* — U.S. ——, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005)). Based upon *Hatch,* it appears that the derrick boat is not a vessel under the Jones Act because the evidence demonstrates that its primary purpose was construction of the seawall. The Supreme Court, however, has recently clarified the definition of a "vessel" for purposes of the Longshore and Harbor Workers' Compensation Act (LHWCA) and the seaman status test, and overruled the primary purpose test articulated by *DiGiovanni* and relied upon by *Hatch. Stewart,* — U.S. ——, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005). The Court held that the definition of "vessel" set forth in 1 U.S.C. § 3 applies to both the LHWCA and the seaman status inquiry. *Stewart,* 125 S.Ct. at 1124. Section 3 states that " 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. Based upon this definition, the Court concluded that a dredge was a vessel under the LHWCA. *Stewart,* 125 S.Ct. at 1125. Further, the Court overruled *DiGiovanni* because it improperly required that a vessel be primarily used for navigation or if primarily used for construction, be in actual transit at the time of injury. *Id.* at 1127–29.

Based upon *Stewart,* it is clear to the Court that the derrick boat is a vessel as defined under § 3. But this conclusion does not alter the Court's view that Arnold is not a seaman under the Jones Act. Indeed the Supreme Court in *Stewart,* recognized that although the definition of vessel under § 3 sweeps broadly, "the other prerequisites to qualifying for seaman status under the Jones Act provide some limits .... A maritime worker seeking Jones Act seaman status must also prove that his duties contributed to the vessel's function or mission, and that his connection to the vessel was substantial both in nature and duration." *Id.* at 1127–28 (citing *Chandris,* 515 U.S. at 376, 115 S.Ct. 2172). As stated previously, Arnold has failed to demonstrate that his duties during the wedge plate attachment phase contributed to the function of a vessel or established a substantial connection to a vessel.

■ Finally, the Court also rejects Arnold's argument that his seaman status can be established based upon his membership in the Seafarers International Union and the fact that pursuant to the contract with the union, Luedtke paid Arnold maintenance and cure after his injury. The Court believes that this evidence distracts from the real issue in this case: whether Arnold's duties during the wedge plate phase satisfy the seaman status test under *Chandris.* Moreover, the Court cannot accept the fact that Arnold's membership in the Seafarers International Union creates a material issue where the other undisputed evidence establishes that his new assignment was a land-based project. *See e.g. Jacobs v. Great Lakes Dredge & Dock Co.,* 1998 WL 107192, (E.D.Pa. Mar. 11, 1998) (rejecting evidence that plaintiff spent sixteen years as a deckhand and tugboat captain and had been a member of the Marine Division of

the International Union of Operating Engineers for twenty-five years, in holding that he was not a seaman after receiving a new work assignment). Similarly, the payment of maintenance and cure pursuant to a union contract fails to refute the evidence demonstrating that Arnold's actual work assignment was a land-based project that does not satisfy the requirements for seaman status under *Chandris.*

## IV.

Although at first glance this case appears to be a close call, on further reflection it is clear that the evidence before the Court can lead to only one conclusion: Arnold was injured while assigned to a land-based project in which water was incidentally involved, by reason of the seawall's proximity to the canal. As such, Arnold cannot satisfy the prerequisites for seaman status set forth in *Chandris* and cannot avail himself of the remedies available under the Jones Act. Although Arnold cannot take advantage of the remedies under the Jones Act, he is not left empty-handed. At oral argument, Luedtke's counsel acknowledged that they did have worker's compensation coverage for its employees. As an employee injured while on the job, it appears that Arnold would be able to recover under the worker's compensation statute. But this issue is not before the Court at this time and the Court does not express an opinion on it.

Arnold has failed to demonstrate that there is a genuine issue of fact that necessitates submitting this case to a jury. Accordingly, Luedtke's motion for summary judgment is granted. The Court will enter an order consistent with this opinion.

### ORDER

This matter is before the Court on Defendant Luedtke Engineering Co.'s motion for summary judgment. In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant's motion (Docket # 40) is **GRANTED.**